# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| LISA HUNTER; JACOB ZABEL; JENNIFER OH; JOHN PERSA; GERALDINE SCHERTZ; and KATHLEEN QUALHEIM,<br><br>        Plaintiffs,<br><br>    v.<br><br>MARGE BOSTELMANN, JULIE M. GLANCEY, ANN S. JACOBS, DEAN KNUDSON, ROBERT F. SPINDELL, JR., and MARK L. THOMSEN, in their official capacities as members of the Wisconsin Elections Commission,<br><br>        Defendants. | Civil Action No. 21-cv-512<br><br>**Three-Judge Court Requested** |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs LISA HUNTER, JACOB ZABEL, JENNIFER OH, JOHN PERSA, GERALDINE SCHERTZ, and KATHLEEN QUAHLEIM, by and through their undersigned counsel, file this Complaint for Declaratory and Injunctive Relief against Defendants MARGE BOSTELMANN, JULIE M. GLANCEY, ANN S. JACOBS, DEAN KNUDSON, ROBERT F. SPINDELL, JR., and MARK L. THOMSEN, in their official capacities as members of the Wisconsin Elections Commission, and allege as follows:

### NATURE OF THE ACTION

1.    This is an action challenging Wisconsin's current legislative and congressional districts, which are unconstitutionally malapportioned. Plaintiffs ask this Court to declare Wisconsin's current legislative and congressional district plans unconstitutional; enjoin Defendants from using the current district plans in any future election; and implement new legislative and congressional district plans that adhere to the constitutional requirement of one-person, one-vote should the Legislature and the Governor fail to do so.

2.     On August 12, 2021, the U.S. Secretary of Commerce delivered census-block results of the 2020 Census to Wisconsin's Governor and legislative leaders. These data confirm the inevitable reality that population shifts that occurred during the last decade have rendered Wisconsin's state legislative and congressional districts unconstitutionally malapportioned. *See Arrington v. Elections Bd.*, 173 F. Supp. 2d 856, 860 (E.D. Wis. 2001) (three-judge court) (explaining that "existing apportionment schemes become instantly unconstitutional upon the release of new decennial census data" (internal quotation marks omitted)).

3.     Specifically, the current district configurations of Wisconsin's State Assembly and State Senate, Wis. Stat. §§ 4.01-4.99 (State Assembly districts), 4.009 (State Senate districts), violate the Fourteenth Amendment to the U.S. Constitution, and the current configuration of Wisconsin's congressional districts, Wis. Stat. §§ 3.11-3.18, violates Article I, Section 2 of the U.S. Constitution. Because they are unconstitutional, the current legislative and congressional district plans cannot be used in any upcoming election, including the 2022 election.

4.     Moreover, delays in the creation of new legislative and congressional plans threaten to violate Plaintiffs' right to associate under the First and Fourteenth Amendments to the U.S. Constitution.

5.     In Wisconsin, legislative and congressional district plans ordinarily are enacted through legislation, which requires the consent of both legislative chambers and the Governor (unless both legislative chambers override the Governor's veto by a two-third vote). *See State ex rel. Reynolds v. Zimmerman*, 22 Wis. 2d 544, 553-59, 126 N.W.2d 551, 557-59 (1964); Wis. Const. art. V, § 10(2)(a).

6.     There is no reasonable prospect that Wisconsin's political branches will reach consensus to enact lawful legislative and congressional district plans in time to be used in the

upcoming 2022 election. Governor Tony Evers is a Democrat, and the State Assembly and State Senate are controlled by Republicans (though they lack veto-proof majorities). In the last four decades, each time Wisconsin's political branches were split along partisan lines, federal judicial intervention was necessary to implement new state legislative plans. This history of frequent impasse led the Wisconsin Supreme Court to observe "the reality that redistricting is now almost always resolved through litigation rather than legislation." *Jensen v. Wis. Elections Bd.*, 2002 WI 13, ¶ 10, 249 Wis. 2d 706, 713, 639 N.W.2d 537, 540 (2002). If anything, in the wake of the 2018 and 2020 elections, the hyper-partisan divisions have only gotten worse, leading to a "very real possibility" that Wisconsin's political branches will fail to reach consensus on new legislative and congressional plans. *Arrington*, 173 F. Supp. 2d at 864.

7.      Given the high likelihood of impasse, this Court should prepare itself to intervene to protect the constitutional rights of Plaintiffs and voters across this State. While there is still time for the Legislature and Governor to enact new plans, this Court should assume jurisdiction now and establish a schedule that will enable the Court to adopt its own plans in the near-certain event that the political branches fail timely to do so.

8.      This action "challeng[es] the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." 28 U.S.C. § 2284(a). Accordingly, a three-judge district court "shall be convened" for this case. *Id.* Plaintiffs respectfully request that this Court notify the Chief Judge of the U.S. Court of Appeals for the Seventh Circuit of this action and request that two judges be added to this Court for the purpose of adjudicating the merits of this dispute. *Id.* § 2284(b)(1).

## JURISDICTION AND VENUE

9.      Plaintiffs bring this action under 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the United States Constitution. This Court has original

jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States and involve the assertion of a deprivation, under color of state law, of a right under the Constitution of the United States. This Court has the authority to enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, and authority to enter injunctive relief under Federal Rule of Civil Procedure 65.

10.     This Court has personal jurisdiction over Defendants, who are sued in their official capacities and reside within this State.

11.     Venue is proper in the Western District of Wisconsin because a substantial part of the events that give rise to Plaintiffs' claims have occurred and will occur in this District, 28 U.S.C. § 1391(b)(2), and because all Defendants, who are sued in their official capacities, have their office in this District, *id.* § 1391(b)(1).

12.     A three-judge district court has jurisdiction to adjudicate this dispute because Plaintiffs "challeng[e] the constitutionality of the apportionment of [Wisconsin's] congressional districts or the apportionment of [Wisconsin's] statewide legislative body." 28 U.S.C. § 2284(a).

## PARTIES

13.     Plaintiffs are citizens of the United States and are registered to vote in Wisconsin. Plaintiffs intend to advocate and vote for Democratic candidates in the upcoming 2022 primary and general elections. Plaintiffs reside in the following congressional and legislative districts.

| Plaintiff | County of Residence | Congressional District | State Senate District | State Assembly District |
|---|---|---|---|---|
| Lisa Hunter | Dane | 2 | 26 | 77 |
| Jacob Zabel | Dane | 2 | 26 | 76 |
| Jennifer Oh | Dane | 2 | 26 | 78 |
| John Persa | Waukesha | 5 | 5 | 13 |
| Geraldine Schertz | Shawano | 8 | 2 | 6 |

| Kathleen Qualheim | Shawano | 8 | 2 | 6 |
|---|---|---|---|---|

14.     As the tables provided below demonstrate, Plaintiffs reside in districts that are overpopulated relative to other districts in the state. Plaintiffs Hunter, Zabel, and Oh's congressional, State Senate, and State Assembly districts are all overpopulated. Plaintiff Persa's State Senate and State Assembly districts (but not his congressional district) are overpopulated. And Plaintiff Schertz and Qualheim's congressional and State Senate districts (but not their State Assembly district) are overpopulated. If the 2022 election is held pursuant to the maps that are currently in place, then Plaintiffs will be deprived of their right to cast an equal vote, as guaranteed to them by the U.S. Constitution.

15.     Defendants Marge Bostelmann, Julie M. Glancey, Ann S. Jacobs, Dean Knudson, Robert F. Spindell, Jr., and Mark L. Thomsen are the six Commissioners of the Wisconsin Elections Commission ("WEC"). They are named as defendants in their official capacities only. The WEC is the governmental body that administers, enforces, and implements Wisconsin's laws "relating to elections and election campaigns, other than laws relating to campaign financing." Wis. Stat. § 5.05(1). The WEC is responsible for implementing redistricting plans, whether enacted by Wisconsin's political branches or by a court. *See id.* §§ 3.11-3.18 (setting forth current congressional district boundaries); 4.009 (setting forth current State Senate districts); 4.01-4.99 (setting forth current State Assembly districts); *see also Whitford v. Gill*, No. 15-cv-421-BBC, 2017 WL 383360, at *3 (W.D. Wis. Jan. 27, 2017) (three-judge court) (enjoining members of the WEC from using existing Assembly map), *vacated on other grounds by Gill v. Whitford*, 138 S. Ct. 1916 (2018); *Baldus v. Members of Wis. Gov't Accountability Bd.*, 862 F. Supp. 2d 860, 863 (E.D. Wis. 2012) (ordering members of the WEC's predecessor, the Government Accountability Board ("GAB"), to implement the court's alterations to the existing State Assembly district plan);

*Baumgart v. Wendelberger*, Nos. 01-C-121, 02-C-366, 2002 WL 34127471, at *8 (E.D. Wis. May 30, 2002) (enjoining members of the Wisconsin Elections Board—the GAB's predecessor—from using existing legislative plan and ordering use of court-drawn plan due to the Legislature's failure to enact new plans following the 2000 Census).

## FACTUAL ALLEGATIONS

**I.     Wisconsin's current legislative and congressional districts were drawn using 2010 Census data.**

16.     On August 9, 2011, over a decade ago, Governor Scott Walker signed legislation creating new state legislative and congressional districts, which were drawn using then-recently published 2010 Census data.

17.     According to the 2010 Census, Wisconsin had a population of 5,686,986. Accordingly, a decade ago, the ideal population for each of Wisconsin's eight congressional districts (*i.e.*, the State's total population divided by the number of districts) was 710,873 persons. Similarly, the ideal population for each State Senate district was 172,333 persons, and the ideal population for each State Assembly district was 57,444 persons.

18.     According to 2010 Census data, the new congressional plan had a maximum deviation (*i.e.*, the difference between the most populated district and least populated district) of exactly one person: six districts had a population of 710,873, and two districts had a population of 710,874. The new State Assembly plan had a deviation of 438 persons (.8% of the ideal district population), and the new State Senate plan had a deviation of 1,076 persons (.6% of the ideal district population).

19.     In April 2012, a federal court made slight adjustments to Assembly Districts 8 and 9. *See Baldus*, 862 F. Supp. 2d at 863. Otherwise, the legislative and congressional plans passed in August 2011 have been used in every election cycle since 2012.

II.      **The 2020 Census is now complete.**

20.      In 2020, the U.S. Census Bureau conducted the decennial census required by Article I, Section 2 of the U.S. Constitution. On April 26, 2021, the U.S. Secretary of Commerce delivered the results of the 2020 Census to the President.

21.      The results of the 2020 Census report that Wisconsin's resident population as of April 2020 is 5,893,718. This is a significant increase from a decade ago, when the 2010 Census reported a population of 5,686,986. Wisconsin will again be apportioned eight congressional districts for the next decade.

22.      According to the 2020 Census results, the ideal population for each of Wisconsin's eight congressional districts (*i.e.*, the State's total population divided by the number of districts) is 736,715; the ideal population for Wisconsin's 99 State Assembly districts is 59,533; and the ideal population for Wisconsin's 33 State Senate districts is 178,598.

III.     **As a result of significant population shifts in the past decade and the publication of the 2020 Census results, Wisconsin's legislative and congressional districts are unconstitutionally malapportioned.**

23.      In the past decade, Wisconsin's population has shifted significantly. Because the 2020 Census has now been completed, the 2010 population data used to draw Wisconsin's current legislative and congressional districts are obsolete, and any prior justifications for the existing maps' deviations from population equality are inapplicable.

24.      On August 12, 2021, the U.S. Census Bureau delivered to Wisconsin its redistricting data file in a legacy format, which the State may use to tabulate the new population of each political subdivision. These data are commonly referred to as "P.L. 94-171 data," a reference to the legislation enacting this process, and are typically delivered no later than April of the year following the Census. *See* Pub. L. No. 94-171, 89 Stat. 1023 (1975).

25.      These data make clear that significant population shifts have occurred in Wisconsin

since 2010, skewing the current legislative and congressional districts far from population equality.

26.    The table below, generated from the P.L. 94-171 data file provided by the Census Bureau on August 12, 2021, shows how the populations of each of Wisconsin's congressional districts have shifted between 2010 and 2020. For each district, the "2010 Population" column represents the district's 2010 population according to the 2010 Census, and the "2020 Population" column indicates the district's 2020 population according to the P.L. 94-171 data. The "Shift" column represents the shift in population between 2010 and 2020. The "Deviation from Ideal 2020 Population" column shows how far the 2020 population of each district strays from the ideal 2020 congressional district population. And the "Percent Deviation" column shows that deviation as a percentage of the ideal 2020 district population.

| District | 2010 Population | 2020 Population | Shift | Deviation from Ideal 2020 Population | Percent Deviation |
|---|---|---|---|---|---|
| 1 | 710,874 | 727,452 | +16,578 | -9,262 | -1.26% |
| 2 | 710,874 | 789,393 | +78,519 | +52,679 | +7.15% |
| 3 | 710,873 | 733,584 | +22,711 | -3,130 | -0.42% |
| 4 | 710,873 | 695,395 | -15,478 | -41,319 | -5.61% |
| 5 | 710,873 | 735,571 | +24,698 | -1,143 | -0.16% |
| 6 | 710,873 | 727,774 | +16,901 | -8,940 | -1.21% |
| 7 | 710,873 | 732,582 | +21,709 | -4,132 | -0.56% |
| 8 | 710,873 | 751,967 | +41,094 | +15,253 | +2.07% |

27.    The table above indicates that population shifts since 2010 have rendered Wisconsin's First, Third, Fourth, Fifth, Sixth, and Seventh Congressional Districts underpopulated, and its Second and Eighth Congressional Districts significantly overpopulated. According to these figures, the maximum deviation among Wisconsin's congressional districts increased from 0 to nearly 13 percent between 2010 and 2020.

28.    The populations of each of Wisconsin's state legislative districts have similarly shifted in the past decade. **Exhibit A** to this Complaint provides the same table showing, for each

State Assembly district, the 2010 population, 2020 population, population shift between 2010 and 2020, deviation from the district's current ideal population, and percent deviation from the district's current ideal population. **Exhibit B** to this Complaint provides the same information for each State Senate district.

29.     According to **Exhibit A**, the maximum deviation among State Assembly districts increased from .8 percent to 32 percent between 2010 and 2020. And according to **Exhibit B**, the maximum deviation among State Senate districts increased from .6 percent to over 22 percent between 2010 and 2020.

30.     In light of these population shifts, Wisconsin's existing legislative and congressional district configurations are unconstitutionally malapportioned. If used in any future election, these district configurations would unconstitutionally dilute the strength of Plaintiffs' votes in legislative and congressional elections because Plaintiffs live in districts with populations that are significantly larger than those in which other voters live.

**IV.     Wisconsin's political branches will likely fail to enact lawful legislative or congressional district maps in time for the next election.**

31.     In Wisconsin, legislative and congressional district plans are enacted through legislation, which must pass both chambers of the Legislature and be signed by the Governor (unless the Legislature overrides the Governor's veto). *See State ex rel. Reynolds v. Zimmerman*, 22 Wis. 2d 544, 553-59, 126 N.W.2d 551, 557-59 (1964). Currently, both chambers of Wisconsin's Legislature are controlled by Republicans, and the Governor is a Democrat. The Republican control of the Legislature is not large enough to override a gubernatorial veto. The partisan division among Wisconsin's political branches makes it extremely unlikely that they will pass lawful legislative or congressional redistricting plans in time to be implemented during the upcoming 2022 election.

32.     Except for the 2010 redistricting cycle—during which Republicans held trifecta control of Wisconsin's state government—Wisconsin's redistricting process has been rife with partisan gridlock. In the last four decades, when Republicans and Democrats controlled competing political branches of Wisconsin's government, the parties have been unable to enact state legislative redistricting plans. As a result, federal courts were forced to intervene in the process of redrawing state legislative districting plans during the 1980, 1990, and 2000 redistricting cycles.

33.     Once again, Wisconsin is entering a new redistricting cycle with political branches divided along partisan lines. If anything, the partisan differences among the major parties have only grown since they last attempted to reach consensus on redistricting plans. In the two years he has been in office, Governor Evers has been in nearly constant conflict with the Republican-controlled Legislature over a broad range of policies, such as the state's response to the COVID-19 pandemic, election administration, Medicaid expansion, budget measures, abortion, and professional licensing, with the Governor using his veto power on many occasions. When it became clear that Republicans had failed to obtain a veto-proof majority in the Legislature in the November 2020 election, Governor Evers pointed immediately to the fact that he would retain the "ability to veto [] bad district lines through redistricting."[1] Earlier that year, when Governor Evers created an independent redistricting commission meant to produce fair statewide maps, Republican legislative leadership indicated that they would ignore the commission's proposals.[2]

34.     On August 10, 2021, Governor Evers vetoed a series of bills passed by the Legislature seeking to alter the rules regarding applying for, delivering, and processing of absentee

---

[1] Mitchell Schmidt, *GOP Falls Short of Veto-Proof Majorities in Wisconsin Legislature*, Wis. State J. (Nov. 5, 2020), https://tinyurl.com/wj6m3d98.
[2] Scott Bauer, *Wisconsin Republicans Dismiss Nonpartisan Redistricting Plan*, Assoc. Press (Jan. 23, 2020), https://tinyurl.com/7vh569yb.

ballots, further illustrating and confirming the persistent gridlock between the Legislature and Governor Evers, especially on election issues.[3]

35.     Moreover, the Census Bureau's significant delays in distributing Wisconsin's population data have compressed the amount of time during which the legislative process would normally take place. This increases the already significant likelihood the political branches will reach an impasse this cycle and fail to enact new legislative and congressional district plans, leaving the existing plans in place for next year's election. To avoid such an unconstitutional outcome, this Court must prepare to intervene to ensure Plaintiffs' and other Wisconsinites' voting strength is not diluted.

36.     The Wisconsin Constitution requires the Legislature to draw new legislative lines "[a]t its first session after each enumeration made by the authority of the United States." Wis. Const. art. IV, § 3. The current legislative session will terminate when the following session begins in early January 2022. *See* Wis. Stat. § 13.02(2) (calling for new annual sessions to begin "on the first Tuesday after the 8th day of January in each year"). Wisconsin law does not set a deadline by which congressional redistricting plans must be in place. Nonetheless, it is in the interests of voters, candidates, and Wisconsin's entire electoral apparatus that finalized legislative and congressional districts be put in place as soon as possible, well before candidates in those districts must begin to collect signatures on their nomination papers. Potential candidates cannot make strategic decisions—including, most importantly, whether to run at all—without knowing the district boundaries. And voters have a variety of interests in knowing as soon as possible the districts in which they reside and will vote, and the precise contours of those districts. These interests include

---

[3] Scott Bauer, *Wisconsin Governor Vetoes GOP Bills to Restrict Absentees*, Assoc. Press (Aug. 10, 2021), https://tinyurl.com/e4he92sj.

deciding which candidates to support and whether to encourage others to run; holding elected representatives accountable for their conduct in office; and advocating for and organizing around candidates who will share their views in Congress or the Wisconsin Legislature, including by working together with other district voters in support of favored candidates.

37.     Candidates seeking to appear on the ballot for the 2022 partisan primary election will begin circulating nomination papers as early as April 15, 2022. Wis. Stat. § 8.15(1). And the deadline to file nomination papers is June 1, 2022. *Id.* It is in everyone's best interest—voters and candidates alike—that district boundaries are set well before the start of the formal nomination process. Delaying the adoption of new plans even until this deadline will substantially interfere with Plaintiffs' ability to associate with like-minded citizens, educate themselves on the positions of their would-be representatives, and advocate for the candidates they prefer. *Cf. Anderson v. Celebrezze*, 460 U.S. 780, 787-88 (1983) ("The [absence] of candidates also burdens voters' freedom of association, because an election campaign is an effective platform for the expression of views on the issues of the day, and a candidate serves as a rallying-point for like-minded citizens.").

38.     If this Court is not prepared to act in the event that the Legislature and Governor fail to enact new legislative or congressional plans, then the 2022 election will be held using illegal district maps, depriving Plaintiffs of their constitutional rights.

## CLAIMS FOR RELIEF

### COUNT I

**Violation of the Fourteenth Amendment to the U.S. Constitution**
**42 U.S.C. § 1983**
**Legislative Malapportionment**

39.     Plaintiffs reallege and reincorporate by reference all prior paragraphs of this

Complaint and the paragraphs in the counts below as though fully set forth herein.

40.     The Fourteenth Amendment to the U.S. Constitution prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." This provision "requires that the seats in both houses of a bicameral state legislature [] be apportioned on a population basis." *Reynolds v. Sims*, 377 U.S. 533, 568 (1964).

41.     In light of the significant population shifts that have occurred since the 2010 Census, and the recent publication of the results of the 2020 Census, the current configurations of Wisconsin's legislative districts—which were drawn based on 2010 Census data—are unconstitutionally malapportioned. These districts are no longer apportioned on a "population basis." Instead, they are based on outdated population data collected more than a decade ago.

42.     Wisconsin's current state legislative plan places voters into districts with significantly disparate populations, causing voters in overpopulated districts, like Plaintiffs, to experience vote dilution compared to voters in districts with comparatively smaller populations.

43.     Any future use of Wisconsin's current legislative plan would violate Plaintiffs' constitutional right to cast an equal vote.

<u>COUNT II</u>

**Violation of Article I, Section 2 of the U.S. Constitution
42 U.S.C. § 1983
Congressional Malapportionment**

44.     Plaintiffs reallege and reincorporate by reference all prior paragraphs of this Complaint and the paragraphs in the count below as though fully set forth herein.

45.     Article I, Section 2 of the U.S. Constitution requires "that when qualified voters elect members of Congress each vote be given as much weight as any other vote." *Wesberry v. Sanders*, 376 U.S. 1, 7 (1964). This means that congressional districts must "achieve population

equality 'as nearly as is practicable.'" *Karcher v. Daggett*, 462 U.S. 725, 730 (1983) (quoting *Wesberry*, 376 U.S. at 7-8).

46.     Article I, Section 2 requires an even higher standard of exact population equality among congressional districts than what the Fourteenth Amendment requires of state legislative districts. It "permits only the limited population variances which are unavoidable despite a good-faith effort to achieve absolute equality, or for which justification is shown." *Karcher*, 462 U.S. at 730 (quoting *Kirkpatrick v. Preisler*, 394 U.S. 526, 531 (1969)). *Any* variation from "absolute population equality" must be narrowly justified. *Id.* at 732-33.

47.     As a result of this requirement, when Wisconsin's existing congressional plan was enacted in 2010, the deviation in population among districts was no more than *one person*. Now, the population deviation among the current congressional districts is nearly 94,000 people.

48.     Given the significant population shifts that have occurred since the 2010 Census, and the recent publication of the results of the 2020 Census, Wisconsin's congressional districts—which were drawn based on 2010 Census data—are now unconstitutionally malapportioned. No justification can be offered for the deviation among the congressional districts because any existing justification would be based on outdated 2010 population data.

49.     Any future use of Wisconsin's current congressional district plan would violate Plaintiffs' constitutional right to an undiluted vote.

## COUNT III

**Violation of the First and Fourteenth Amendments to the U.S. Constitution**
**42 U.S.C. § 1983**
**Freedom of Association**

50.     Plaintiffs reallege and reincorporate by reference all prior paragraphs of this Complaint as though fully set forth herein.

51.     Among other rights, the First Amendment protects the "freedom of association" from infringement by the federal government and applies to state governments pursuant to the Fourteenth Amendment. *See Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 276-77 (1964)).

52.     Impeding candidates' ability to run for political office—and, consequently, Plaintiffs' ability to assess candidate qualifications and positions, organize and advocate for preferred candidates, and associate with like-minded voters—infringes on Plaintiffs' First Amendment right to association. *See, e.g.*, *Anderson*, 460 U.S. at 787-88 & n.8.

53.     Given the delay in publication of the 2020 Census data and the near-certain deadlock among the political branches in adopting new legislative and congressional district plans, it is significantly unlikely that the legislative process will timely yield new plans. This would deprive Plaintiffs of the ability to associate with others from the same lawfully apportioned legislative and congressional districts, and, therefore, is likely to significantly, if not severely, burden Plaintiffs' First Amendment right to association.

54.     Defendants can assert no legitimate, let alone compelling, interest that justifies this burden.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court:

a.  Notify the Chief Judge of the U.S. Court of Appeals for the Seventh Circuit of this action and request that two other judges be designated to form a three-judge district court, 28 U.S.C. § 2284(b)(1);

b.  Declare that the current configurations of Wisconsin's State Assembly and State Senate districts, Wis. Stat. §§ 4.01-4.99, 4.009, violate the First and Fourteenth Amendments

to the United States Constitution;

c.  Declare that the current configuration of Wisconsin's congressional districts, Wis. Stat. §§ 3.11-3.18, violates Article I, Section 2 of, and the First and Fourteenth Amendments to, the United States Constitution;

d.  Permanently enjoin Defendants, their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from implementing, enforcing, or giving any effect to Wisconsin's current legislative or congressional districting plans;

e.  Establish a schedule that will enable the Court to adopt and implement new legislative and congressional district plans by a date certain should the political branches fail to enact such plans by that time;

f.  Implement a new legislative district plan that complies with the Fourteenth Amendment to the U.S. Constitution, and a new congressional district plan that complies with Article I, Section 2 of the U.S. Constitution;

g.  Award Plaintiffs their costs, disbursements, and reasonable attorneys' fees incurred in bringing this action, pursuant to 42 U.S.C. § 1988 and other applicable laws; and

h.  Grant such other and further relief as the Court deems just and proper.

Dated:  August 13, 2021

Charles G. Curtis Jr.
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, WI 53703-3095
Telephone: (608) 663-5411
Facsimile: (608) 283-4462
CCurtis@perkinscoie.com

Respectfully submitted,

/s/ *Aria C. Branch*
Marc E. Elias
Aria C. Branch
Daniel C. Osher*
Jacob Shelly*
Christina A. Ford*
PERKINS COIE LLP
700 Thirteenth Street, NW Suite 800
Washington, DC 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
MElias@perkinscoie.com
ABranch@perkinscoie.com
DOsher@perkinscoie.com
JShelly@perkinscoie.com
ChristinaFord@perkinscoie.com

*Motion for *Pro Hac Vice* Admission Forthcoming

**Exhibit A: Shifts in State Assembly Districts**

| District | 2010 Population | 2020 Population | Shift | Deviation from Ideal Population | Percent Deviation |
|---|---|---|---|---|---|
| 1 | 57,220 | 59,834 | +2,614 | +301 | +0.51% |
| 2 | 57,649 | 62,564 | +4,915 | +3,031 | +5.09% |
| 3 | 57,444 | 61,906 | +4,462 | +2,373 | +3.99% |
| 4 | 57,486 | 58,716 | +1,230 | -817 | -1.37% |
| 5 | 57,470 | 67,428 | +9,958 | +7,895 | +13.26% |
| 6 | 57,505 | 57,409 | -96 | -2,124 | -3.57% |
| 7 | 57,498 | 59,355 | +1,857 | -178 | -0.30% |
| 8 | 57,196 | 53,999 | -3,197 | -5,534 | -9.30% |
| 9 | 57,283 | 57,339 | +56 | -2,194 | -3.69% |
| 10 | 57,428 | 52,628 | -4,800 | -6,905 | -11.60% |
| 11 | 57,503 | 54,275 | -3,228 | -5,258 | -8.83% |
| 12 | 57,494 | 56,305 | -1,189 | -3,228 | -5.42% |
| 13 | 57,452 | 61,779 | +4,327 | +2,246 | +3.77% |
| 14 | 57,597 | 60,136 | +2,539 | +603 | +1.01% |
| 15 | 57,372 | 57,145 | -227 | -2,388 | -4.01% |
| 16 | 57,458 | 53,739 | -3,719 | -5,794 | -9.73% |
| 17 | 57,354 | 55,343 | -2,011 | -4,190 | -7.04% |
| 18 | 57,480 | 52,987 | -4,493 | -6,546 | -11.00% |
| 19 | 57,546 | 62,056 | +4,510 | +2,523 | +4.24% |
| 20 | 57,428 | 56,812 | -616 | -2,721 | -4.57% |
| 21 | 57,449 | 59,100 | +1,651 | -433 | -0.73% |
| 22 | 57,495 | 60,750 | +3,255 | +1,217 | +2.04% |
| 23 | 57,579 | 60,761 | +3,182 | +1,228 | +2.06% |
| 24 | 57,282 | 60,737 | +3,455 | +1,204 | +2.02% |
| 25 | 57,322 | 57,986 | +664 | -1,547 | -2.60% |
| 26 | 57,581 | 58,710 | +1,129 | -823 | -1.38% |
| 27 | 57,536 | 59,294 | +1,758 | -239 | -0.40% |
| 28 | 57,467 | 59,274 | +1,807 | -259 | -0.44% |
| 29 | 57,537 | 61,746 | +4,209 | +2,213 | +3.72% |
| 30 | 57,241 | 62,735 | +5,494 | +3,202 | +5.38% |
| 31 | 57,240 | 59,952 | +2,712 | +419 | +0.70% |
| 32 | 57,524 | 59,397 | +1,873 | -136 | -0.23% |
| 33 | 57,565 | 58,490 | +925 | -1,043 | -1.75% |
| 34 | 57,387 | 60,803 | +3,416 | +1,270 | +2.13% |
| 35 | 57,562 | 56,431 | -1,131 | -3,102 | -5.21% |
| 36 | 57,432 | 57,713 | +281 | -1,820 | -3.06% |
| 37 | 57,507 | 61,182 | +3,675 | +1,649 | +2.77% |
| 38 | 57,493 | 61,646 | +4,153 | +2,113 | +3.55% |
| 39 | 57,387 | 58,192 | +805 | -1,341 | -2.25% |
| 40 | 57,366 | 57,138 | -228 | -2,395 | -4.02% |

| 41 | 57,337 | 57,743 | +406 | -1,790 | -3.01% |
|----|--------|--------|------|--------|--------|
| 42 | 57,285 | 58,322 | +1,037 | -1,211 | -2.03% |
| 43 | 57,443 | 59,492 | +2,049 | -41 | -0.07% |
| 44 | 57,395 | 58,574 | +1,179 | -959 | -1.61% |
| 45 | 57,658 | 57,664 | +6 | -1,869 | -3.14% |
| 46 | 57,458 | 65,092 | +7,634 | +5,559 | +9.34% |
| 47 | 57,465 | 63,646 | +6,181 | +4,113 | +6.91% |
| 48 | 57,506 | 63,754 | +6,248 | +4,221 | +7.09% |
| 49 | 57,346 | 57,941 | +595 | -1,592 | -2.67% |
| 50 | 57,624 | 58,713 | +1,089 | -820 | -1.38% |
| 51 | 57,580 | 56,878 | -702 | -2,655 | -4.46% |
| 52 | 57,232 | 59,848 | +2,616 | +315 | +0.53% |
| 53 | 57,240 | 58,579 | +1,339 | -954 | -1.60% |
| 54 | 57,250 | 57,411 | +161 | -2,122 | -3.56% |
| 55 | 57,493 | 61,992 | +4,499 | +2,459 | +4.13% |
| 56 | 57,582 | 64,544 | +6,962 | +5,011 | +8.42% |
| 57 | 57,501 | 57,937 | +436 | -1,596 | -2.68% |
| 58 | 57,227 | 59,054 | +1,827 | -479 | -0.80% |
| 59 | 57,391 | 58,158 | +767 | -1,375 | -2.31% |
| 60 | 57,385 | 59,358 | +1,973 | -175 | -0.29% |
| 61 | 57,614 | 59,972 | +2,358 | +439 | +0.74% |
| 62 | 57,345 | 58,422 | +1,077 | -1,111 | -1.87% |
| 63 | 57,365 | 59,808 | +2,443 | +275 | +0.46% |
| 64 | 57,270 | 57,845 | +575 | -1,688 | -2.84% |
| 65 | 57,455 | 57,248 | -207 | -2,285 | -3.84% |
| 66 | 57,545 | 56,026 | -1,519 | -3,507 | -5.89% |
| 67 | 57,239 | 60,513 | +3,274 | +980 | +1.65% |
| 68 | 57,261 | 61,896 | +4,635 | +2,363 | +3.97% |
| 69 | 57,649 | 57,134 | -515 | -2,399 | -4.03% |
| 70 | 57,552 | 58,276 | +724 | -1,257 | -2.11% |
| 71 | 57,519 | 57,866 | +347 | -1,667 | -2.80% |
| 72 | 57,449 | 57,669 | +220 | -1,864 | -3.13% |
| 73 | 57,453 | 58,507 | +1,054 | -1,026 | -1.72% |
| 74 | 57,494 | 59,010 | +1,516 | -523 | -0.88% |
| 75 | 57,462 | 58,751 | +1,289 | -782 | -1.31% |
| 76 | 57,617 | 71,685 | +14,068 | +12,152 | +20.41% |
| 77 | 57,433 | 62,992 | +5,559 | +3,459 | +5.81% |
| 78 | 57,546 | 67,142 | +9,596 | +7,609 | +12.78% |
| 79 | 57,461 | 69,732 | +12,271 | +10,199 | +17.13% |
| 80 | 57,585 | 65,830 | +8,245 | +6,297 | +10.58% |
| 81 | 57,403 | 59,943 | +2,540 | +410 | +0.69% |
| 82 | 57,430 | 59,196 | +1,766 | -337 | -0.57% |
| 83 | 57,423 | 58,770 | +1,347 | -763 | -1.28% |
| 84 | 57,365 | 59,529 | +2,164 | -4 | -0.01% |
| 85 | 57,480 | 58,671 | +1,191 | -862 | -1.45% |

| 86 | 57,454 | 60,462 | +3,008 | +929 | +1.56% |
|----|--------|--------|--------|------|--------|
| 87 | 57,358 | 57,051 | -307 | -2,482 | -4.17% |
| 88 | 57,556 | 62,894 | +5,338 | +3,361 | +5.65% |
| 89 | 57,634 | 60,143 | +2,509 | +610 | +1.02% |
| 90 | 57,608 | 57,912 | +304 | -1,621 | -2.72% |
| 91 | 57,359 | 59,397 | +2,038 | -136 | -0.23% |
| 92 | 57,431 | 59,334 | +1,903 | -199 | -0.33% |
| 93 | 57,548 | 60,667 | +3,119 | +1,134 | +1.90% |
| 94 | 57,266 | 62,080 | +4,814 | +2,547 | +4.28% |
| 95 | 57,372 | 58,704 | +1,332 | -829 | -1.39% |
| 96 | 57,484 | 58,372 | +888 | -1,161 | -1.95% |
| 97 | 57,279 | 56,590 | -689 | -2,943 | -4.94% |
| 98 | 57,513 | 61,407 | +3,894 | +1,874 | +3.15% |
| 99 | 57,496 | 57,780 | +284 | -1,753 | -2.94% |

**Exhibit B: Shifts in State Senate Districts**

| District | 2010 Population | 2020 Population | Shift | Deviation from Ideal Population | Percent Deviation |
|---|---|---|---|---|---|
| 1 | 172,313 | 184,304 | +11,991 | +5,706 | +3.19% |
| 2 | 172,461 | 183,553 | +11,092 | +4,955 | +2.77% |
| 3 | 171,977 | 170,693 | -1,284 | -7,905 | -4.43% |
| 4 | 172,425 | 163,208 | -9,217 | -15,390 | -8.62% |
| 5 | 172,421 | 179,060 | +6,639 | +462 | +0.26% |
| 6 | 172,292 | 162,069 | -10,223 | -16,529 | -9.25% |
| 7 | 172,423 | 177,968 | +5,545 | -630 | -0.35% |
| 8 | 172,356 | 182,248 | +9,892 | +3,650 | +2.04% |
| 9 | 172,439 | 175,990 | +3,551 | -2,608 | -1.46% |
| 10 | 172,245 | 183,755 | +11,510 | +5,157 | +2.89% |
| 11 | 172,329 | 177,839 | +5,510 | -759 | -0.42% |
| 12 | 172,381 | 174,947 | +2,566 | -3,651 | -2.04% |
| 13 | 172,387 | 181,020 | +8,633 | +2,422 | +1.36% |
| 14 | 171,988 | 173,203 | +1,215 | -5,395 | -3.02% |
| 15 | 172,496 | 175,730 | +3,234 | -2,868 | -1.61% |
| 16 | 172,429 | 192,492 | +20,063 | +13,894 | +7.78% |
| 17 | 172,550 | 173,532 | +982 | -5,066 | -2.84% |
| 18 | 171,722 | 175,838 | +4,116 | -2,760 | -1.55% |
| 19 | 172,576 | 184,473 | +11,897 | +5,875 | +3.29% |
| 20 | 172,003 | 176,570 | +4,567 | -2,028 | -1.14% |
| 21 | 172,324 | 178,202 | +5,878 | -396 | -0.22% |
| 22 | 172,270 | 171,119 | -1,151 | -7,479 | -4.19% |
| 23 | 172,149 | 179,543 | +7,394 | +945 | +0.53% |
| 24 | 172,520 | 173,811 | +1,291 | -4,787 | -2.68% |
| 25 | 172,409 | 176,268 | +3,859 | -2,330 | -1.30% |
| 26 | 172,596 | 201,819 | +29,223 | +23,221 | +13.00% |
| 27 | 172,449 | 195,505 | +23,056 | +16,907 | +9.47% |
| 28 | 172,218 | 177,495 | +5,277 | -1,103 | -0.62% |
| 29 | 172,292 | 176,184 | +3,892 | -2,414 | -1.35% |
| 30 | 172,798 | 180,949 | +8,151 | +2,351 | +1.32% |
| 31 | 172,338 | 179,398 | +7,060 | +800 | +0.45% |
| 32 | 172,122 | 179,156 | +7,034 | +558 | +0.31% |
| 33 | 172,288 | 175,777 | +3,489 | -2,821 | -1.58% |