Case: 3:21-cv-00512-jdp-ajs-eec   Document #: 60   Filed: 09/16/21   Page 1 of 9

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LISA HUNTER, JACOB ZABEL,
JENNIFER OH, JOHN PERSA, GERALDINE
SCHERTZ, and KATHLEEN QUALHEIM,

                Plaintiffs,

    v.

MARGE BOSTELMANN, JULIE M. GLANCEY,
ANN S. JACOBS, DEAN KNUDSON, ROBERT
F. SPINDELL, JR., and MARK L. THOMSEN, in
their official capacities as members of the
Wisconsin Elections Commission,

                Defendants,
    and

WISCONSIN LEGISLATURE,

                Intervenor-Defendant.

OPINION and ORDER

21-cv-512-jdp-ajs-eec

---

BLACK LEADERS ORGANIZING FOR
COMMUNITIES, VOCES DE LA FRONTERA,
the LEAGUE OF WOMEN VOTERS OF
WISCONSIN, CINDY FALLONA, LAUREN
STEPHENSON, and REBECCA ALWIN,

                Plaintiffs,

    v.

MARGE BOSTELMANN, JULIE M. GLANCEY,
ANN S. JACOBS, DEAN KNUDSON, ROBERT
F. SPINDELL, JR., and MARK L. THOMSEN, in
their official capacities as members of the
Wisconsin Elections Commission, and
MEAGAN WOLFE, in her official capacity as the
administrator of the Wisconsin Elections Commission,

                Defendants.

OPINION and ORDER

21-cv-534-jdp-ajs-eec

This panel has been assigned two cases about the malapportionment of Wisconsin's state legislative and congressional districts following the 2020 census. Case No. 21-cv-512 is brought by a group of individuals that the court will call "the Hunter plaintiffs" because the first named plaintiff is Lisa Hunter. Case No. 21-cv-534 is brought by a number of individuals and organizations that the court will call "the BLOC plaintiffs" because the first named plaintiff is Black Leaders Organizing for Communities. There are several motions pending in the two cases that the court will address in this opinion.

**A. Motions for intervention in Case No. 21-cv-512**

Three sets of proposed intervenors seek to join the '512 case: (1) other Wisconsin residents bringing malapportionment claims who have also filed a petition for original action in the Wisconsin Supreme Court (the Johnson intervenors), Dkt. 21; (2) Wisconsin members of the United States House of Representatives who say that they are probable candidates to run again in 2022 (the Congressmen), Dkt. 30; and (3) Tony Evers, the Wisconsin governor, Dkt. 50.[1] The court has already granted the Wisconsin Legislature's motion to intervene in the '512 case. Dkt. 24, at 2–3.

As the court has already discussed with regard to the Legislature, permissive intervention under Rule 24(b) is appropriate if the motion is timely and the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact." Rule 24(b)(1)(B). The decision whether to allow intervention is committed to the discretion of the court, *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000), but "the court must consider whether the intervention will unduly delay or prejudice the

---

[1] All docket citations are to entries in Case No. 21-cv-512 unless otherwise noted.

2

adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *see also Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793, 803 (7th Cir. 2019).

The Johnson intervenors' proposed complaint shares questions of law and fact with the Hunter plaintiffs' complaint because they raise virtually identical claims regarding legislative and congressional malapportionment. That itself isn't dispositive because every Wisconsin voter who lives in one of the now-overpopulated districts holds the same interest as the Hunter plaintiffs. But the Johnson intervenors' motion to intervene is timely, unopposed, and they have an additional interest that militates in favor of their intervention: they've filed a petition for original action in the Wisconsin Supreme Court and they seek a stay of this federal action pending resolution by either the state legislative process or court proceedings. *Johnson v. Wisconsin Elections Comm'n*, No. 2021AP1450; *see also* Dkt. 21-2 (proposed motion to stay). The Johnson intervenors pledge to work within whatever schedule the court adopts, so the court sees no disadvantage to the other parties. The court will grant the Johnson intervenors' motion to intervene.

The Congressmen's motion to intervene is also timely, but unlike the Johnson intervenors' motion, it is opposed. The Hunter plaintiffs argue that the Congressmen do not have any special entitlement to control the drawing of their districts. That's a fair point, but as the Congressmen point out, other courts have concluded that incumbents and prospective candidates have a substantial interest in the redistricting process. *See, e.g.*, *League of Women Voters of Michigan v. Johnson*, 902 F.3d 572, 579 (6th Cir. 2018) (reversing denial of permissive intervention for members of Congress, stating that "the contours of the maps affect the Congressmen directly and substantially by determining which constituents the Congressmen must court for votes and represent in the legislature."); *Baldus v. Members of Wisconsin Gov't*

3

*Accountability Bd.*, No. 11-CV-562, 2011 WL 5834275, at *2 (E.D. Wis. Nov. 21, 2011) ("intervenors are much more likely to run for congressional election and thus have a substantial interest in establishing the boundaries of their congressional districts").

The Hunter plaintiffs attempt to distinguish *Baldus* and the Michigan case because those involved challenges to already-drawn maps as opposed to the required decennial redistricting at issue in this case. The Hunter plaintiffs say that representatives elected in 2020 would know their districts could be redrawn before the 2022 election. The court is not persuaded that this distinction is material: in each of these scenarios a legislator faces potential revisions to his or her district boundaries before the next election. And as the Hunter plaintiffs concede, redistricting courts may consider a proposed map's treatment of incumbents. *Bush v. Vera*, 517 U.S. 952, 964 (1996) ("And we have recognized incumbency protection, at least in the limited form of avoiding contests between incumbents, as a legitimate state goal." (internal quotation marks omitted)). The last time a federal panel considered congressional redistricting—following the 2000 census—the court allowed members of Congress to intervene, citing *Bush*. *Arrington v. Elections Bd.*, No. 01-CV-121, slip op. at 4 (E.D. Wis. Feb. 13, 2002). Based on these authorities, permissive intervention is appropriate for the Congressmen.

Briefing has not been completed on Governor Evers's motion to intervene, but given the addition of the other intervenors, particularly the legislature, there is no principled reason to deny Evers's motion. Evers can make the same case for intervention as the Legislature, with whom he shares responsibility for enacting a state law establishing new districts in light of the 2020 Census.[2] The court will grant Evers's motion for intervention.

---

[2] Evers has taken the initiative to establish a "People's Maps Commission," to produce district maps that he is apparently prepared to support. Executive Order No. 66, Relating to Creating the People's Maps Commission (Jan. 27, 2020), https://evers.wi.gov/Documents/EO/EO066-

4

Now that that court has granted these motions to intervene, the existing parties represent the spectrum of legitimate interests in Wisconsin's decennial redistricting. This case is already complicated, especially in light of the time available to resolve it. So any further requests to intervene will require a particularly compelling showing.

## B. Proposed amended complaint in Case No. 21-cv-534

The BLOC plaintiffs have filed a proposed amended complaint adding a claim under Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, and eight individual plaintiffs who bring that claim, alleging that they live in Wisconsin Assembly districts that have been racially gerrymandered. Dkt. 22-1 in the '534 case. They acknowledge that leave of court is required because they seek to add new plaintiffs. *Williams v. United States Postal Serv.*, 873 F.2d 1069, 1072 n.2 (7th Cir. 1989). They note that they contacted the Elections Commission defendants (the only defendants of record at this point in that case) and that defendants do not oppose the motion. Dkt. 22 in the '534 case, at 4.

Leave to amend should be freely given when justice so requires. *Id.* at 1072; *see also* Fed. R. Civ. P. 15(a)(2). The court will grant the BLOC plaintiffs leave to amend the complaint. The amendment expands the substantive scope of the case. But their request comes early in the proceedings, and the Voting Rights Act claim involves race-based districting issues that are integral to the drawing of statewide maps. Including those claims in this case would be more efficient than entertaining them in a separate case.

---

PeoplesMapsCommission.pdf.

**C. Consolidation**

The court has already expressed its inclination to consolidate the two cases, and the parties were given a chance to state their positions on consolidation. Dkt. 24, at 3. The court extended this deadline after the BLOC plaintiffs sought to amend their complaint. Dkt. 46. Even after this extension, no party opposes consolidation. The court concludes that it is appropriate to consolidate the two actions for all purposes, to provide the most efficient resolution of the related claims raised by the parties in the two cases.

The Legislature has filed a motion to intervene in the '534 case, Dkt. 10 in that case. Because the court is consolidating the two cases, the Legislature's motion will be denied as moot, with the understanding that all the parties are now full participants in both cases.

**D. Motions to dismiss**

The Legislature has moved to dismiss the '512 case, contending that the lawsuit is not ripe and that the Hunter plaintiffs lack standing; it says that the Hunter plaintiffs' injuries are purely speculative because the legislative redistricting process has not yet had a chance to fail. Dkt. 9-2. In making these arguments the Legislature relies heavily on *Growe v. Emison*, a case in which the Supreme Court held that a federal three-judge panel had erred in not deferring to the Minnesota courts' redistricting efforts and by enjoining the state courts from implementing their own plans. 507 U.S. 25, 37 (1993) ("What occurred here was not a last-minute federal-court rescue of the Minnesota electoral process, but a race to beat the [state courts'] Special Redistricting Panel to the finish line."). The Congressmen filed a similar proposed motion with their motion to intervene, Dkt. 30-2, and the Johnson intervenors filed a similar motion to stay proceedings along with their motion for intervention, Dkt. 21-2.

This court understands the state government's primacy in redistricting its legislative and congressional maps. *Id.* at 34 ("'We say once again what has been said on many occasions: reapportionment is primarily the duty and responsibility of the State through its legislature or other body, rather than of a federal court.'" (quoting *Chapman v. Meier*, 420 U.S. 1, 27 (1975))). But the *Growe* Court did not conclude that the federal case was unripe or that the plaintiffs lacked standing. And this panel is not impeding or superseding any concurrent state redistricting process, steps that that might run afoul of *Growe*.

This court will follow the approach taken by the federal panel handling Wisconsin redistricting after the 2000 census, *Arrington v. Elections Bd.*, 173 F. Supp. 2d 856 (E.D. Wis. 2001). That panel considered the same ripeness and standing concerns at issue here and concluded that the malapportionment complaint presented a case or controversy that the court should retain. *Id.* at 860–67. In particular, the panel concluded that plaintiffs properly alleged a sufficient injury by stating that their votes would be diluted by unconstitutional maps. *Id.* at 862–64. To avoid interfering with state processes, the panel concluded that it was appropriate to stay proceedings "until the appropriate state bodies have attempted—and failed—to do so on their own." *Id.* at 867.

The motions to dismiss have not been fully briefed, but the court already has three briefs advocating for dismissal or stay, by the Legislature, Dkt. 9-3, the Congressmen, Dkt. 30-3, and the Johnson intervenors, Dkt. 21-3. These parties argue that the panel should forestall from any action until the state court system hears the case. But there is yet no indication that the state courts will entertain redistricting in the face of an impasse between the legislature and the governor. Federal panels—not state courts—have intervened in the last three redistricting cycles in which Wisconsin has had a divided government. *See Baumgart v.*

7

*Wendelberger*, Nos. 01-C-0121, 02-C-0366, 2002 WL 34127471 (E.D. Wis. May 30, 2002); *Prosser v. Elections Bd.*, 793 F. Supp. 859 (W.D. Wis. 1992); *Wisconsin State AFL-CIO v. Elections Bd.*, 543 F. Supp. 630 (E.D. Wis. 1982). Given this historical pattern, and the urgent requirement of prompt action, the panel will deny the Legislature's motion to dismiss. The court and the parties must prepare now to resolve the redistricting dispute, should the state fail to establish new maps in time for the 2022 elections.[3]

The motions for an indefinite stay will be denied, but the issue of a more limited stay will be considered at the upcoming status conference. *See* Dkt. 58. The court is inclined to follow the *Arrington* approach by imposing a limited stay to give the legislative process, and perhaps the state courts, the first opportunity to enact new maps. But the court will set a schedule that will allow for the timely resolution of the case should the state process languish or fail. The parties' joint submission on the schedule, Dkt. 54, was unhelpful, but the court will take the parties' input on the schedule, given this general framework, at the status conference.

ORDER

IT IS ORDERED that:

1. The motion to intervene filed by Billie Johnson, Eric O'Keefe, Ed Perkins, and Ronald Zahn, Dkt. 21 in Case No. 21-cv-512, is GRANTED.

---

[3] The movants contend that the current redistricting cycle will diverge from the historical pattern because the Johnson intervenors have filed a petition for original action in the Wisconsin Supreme Court. If the Wisconsin Supreme Court grants the petition, the parties should inform the court and the court will consider the Supreme Court's action in setting the schedule.

2. The motion to intervene filed by Scott Fitzgerald, Mike Gallagher, Glenn Grothman, Bryan Steil, and Tom Tiffany, Dkt. 30 in Case No. 21-cv-512, is GRANTED.

3. The motion to intervene filed by Tony Evers, Dkt. 50 in Case No. 21-cv-512, is GRANTED.

4. The BLOC plaintiffs' motion for leave to amend their complaint, Dkt. 22 in Case No. 21-cv-534, is GRANTED.

5. Case No. 21-cv-534 is CONSOLIDATED with Case No. 21-cv-512 for all purposes. Going forward, all filings for either case should be filed in Case No. 21-cv-512.

6. The Legislature's motion to intervene in Case No. 21-cv-534, Dkt. 10 in the '534 case, is DENIED as moot.

7. The Legislature's motions to dismiss, Dkt. 9-2 in Case No. 21-cv-512 and Dkt. 11-2 in Case No. 21-cv-534, are DENIED.

8. The motion to dismiss filed by Scott Fitzgerald, Mike Gallagher, Glenn Grothman, Bryan Steil, and Tom Tiffany, Dkt. 30-2 in Case No. 21-cv-512, is DENIED.

9. The motion to stay filed by Billie Johnson, Eric O'Keefe, Ed Perkins, and Ronald Zahn, Dkt. 21-2 in Case No. 21-cv-512, is DENIED.

Entered September 16, 2021.

BY THE COURT:

/s/_____
JAMES D. PETERSON
District Judge

/s/_____
AMY J. ST. EVE
Circuit Judge

/s/_____
EDMOND E. CHANG
District Judge