IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LISA HUNTER, JACOB ZABEL,
JENNIFER OH, JOHN PERSA, GERALDINE
SCHERTZ, and KATHLEEN QUALHEIM,

                    Plaintiffs,

and

BILLIE JOHNSON, ERIC O'KEEFE, ED PERKINS,
and RONALD ZAHN,

                    Intervenor-Plaintiffs,

    v.

MARGE BOSTELMANN, JULIE M. GLANCEY,
ANN S. JACOBS, DEAN KNUDSON, ROBERT
F. SPINDELL, JR., and MARK L. THOMSEN, in
their official capacities as members of the
Wisconsin Elections Commission,

                    Defendants,

and

WISCONSIN LEGISLATURE,

                    Intervenor-Defendant,

and

CONGRESSMEN GLENN GROTHMAN,
MIKE GALLAGHER, BRYAN STEIL, TOM TIFFANY,
and SCOTT FITZGERALD,

                    Intervenor-Defendants,

and

GOVERNOR TONY EVERS,

                    Intervenor-Defendant.

OPINION and ORDER

21-cv-512-jdp-ajs-eec

---

BLACK LEADERS ORGANIZING FOR
COMMUNITIES, VOCES DE LA FRONTERA,
the LEAGUE OF WOMEN VOTERS OF
WISCONSIN, CINDY FALLONA, LAUREN
STEPHENSON, and REBECCA ALWIN,

       Plaintiffs,

v.                OPINION and ORDER

MARGE BOSTELMANN, JULIE M. GLANCEY,  21-cv-534-jdp-ajs-eec
ANN S. JACOBS, DEAN KNUDSON, ROBERT
F. SPINDELL, JR., and MARK L. THOMSEN, in
their official capacities as members of the
Wisconsin Elections Commission, and
MEAGAN WOLFE, in her official capacity as the
administrator of the Wisconsin Elections Commission,

       Defendants.

---

This order addresses the case schedule and other matters pending before the court.

**A. Case schedule and motions to dismiss or stay**

The court asked the parties to confer and submit a joint proposed discovery plan and pretrial schedule on the assumption that trial would be completed by January 28, 2022, so that this court could, if necessary, have maps ready by March 1, 2022, which was the deadline provided by the defendant Wisconsin Elections Commission. *See* Dkt. 75.[1] After the Wisconsin Supreme Court granted the petition to commence an original action on redistricting, the court asked the parties to explain how the Wisconsin Supreme Court proceeding would affect this case. Once again, there is little on which the parties agree.

The intervenor-defendant Legislature thinks the federal case should be dismissed entirely, or failing that, delayed as long as possible, presumably to give the Wisconsin Supreme

---

[1] Docket citations in this order are to the entries in Case No. 21-cv-512.

2

Court the maximum time to draw Wisconsin's maps. The Johnson intervenor-plaintiffs are generally sympathetic to the Legislature's perspective, and they have filed a second motion to stay these cases.[2] Dkt. 79. The Hunter plaintiffs, the BLOC plaintiffs, and intervenor-defendant Governor Tony Evers would press on in this court and begin discovery almost immediately. The court will reject the two polar approaches.

Over the last six decades, when Wisconsin has had divided government, it has frequently failed to enact redistricting plans, and the federal courts—not the Wisconsin Supreme Court—have drawn Wisconsin's maps. When these cases were filed, it seemed likely that the federal courts would be called upon once again. But the recent decision by the Wisconsin Supreme Court to take up the redistricting issue suggests that this pattern may not repeat itself. It seems as unlikely as ever that Wisconsin will enact a redistricting law, but the Wisconsin Supreme Court seems poised to step into the breach for the first time since 1964.

Federal rights are at stake, so this court will stand by to draw the maps—should it become necessary. The court recognizes that responsibility for redistricting falls first to the states, and that this court should minimize any interference with the state's own redistricting efforts. But the Wisconsin Supreme Court did not commit to drawing new legislative or congressional maps, and has not yet set a schedule to do so, or even to decide whether it will do so. Dkt. 79-1, at 3. It is appropriate for this court to provide a date by which the state must act to avoid federal involvement in redistricting. *Growe v. Emison*, 507 U.S. 25, 36 (1993).

---

[2] The renewed motion to stay is fully briefed. The parties' responses are at Dkt. 89 to Dkt. 95. The Congressmen intervenor-defendants, the Hunter plaintiffs, and the Johnson intervenor-plaintiffs each ask for leave to file an additional brief. Dkt. 97; Dkt. 100; Dkt. 101. The court will grant each of those motions and will accept the proffered briefs.

The court is not persuaded by the Legislature's proposal to forestall trial until late March. Nomination papers for the 2022 partisan primary elections are due June 1. Wis. Stat. § 8.15(1) (2019–20). By statute, candidates may begin collecting signatures to support their candidacies on April 15, giving them six weeks to collect signatures. *Id.* Defendant Wisconsin Election Commission says it needs six weeks to prepare for the April 15 deadline, which would mean that Wisconsin's maps must be ready by March 1. The Legislature apparently assumes, without providing any explanation why, that the redistricting process can cut into the commission's preparation time or the candidates' six-week window to circulate nomination papers. Based on the information that the parties have so far provided to the court, March 1, 2022, is the deadline by which the maps must be available. Until the court is persuaded otherwise, the court will reserve five days beginning January 31, 2022, for trial of this matter.

This trial date is not far off, but the court will not open discovery immediately. The BLOC plaintiffs have professed the need for particularly searching discovery, which will impose significant burdens on the parties. It also risks substantial interference with the redistricting process and other government functions. All this might turn out to be wasted effort if the Wisconsin Supreme Court acts, and also because the BLOC plaintiffs' claims are the target of a pending, and not yet fully briefed, motion to dismiss.

Moreover, the proceeding in the Wisconsin Supreme Court will, presumably, provide some fact-development process through which the parties can develop much of the evidence they would need should the federal case proceed to trial. But that leads to one of the difficulties this court faces in determining how to proceed: this court lacks information about the timing of the redistricting process in the Wisconsin Supreme Court and the scope of the issues to be resolved. The supplemental briefs from the Congressmen intervenor-defendants and the

Hunter plaintiffs raise the question of whether the Wisconsin Supreme Court action will address malapportionment of the congressional map. And it is not yet clear whether the parties to that action will be able to raise federal Voting Rights Act claims.

In light of these concerns, the court will grant the Johnson intervenor-plaintiffs' motion for a stay, in part. Discovery is stayed until at least November 5. By that date, the parties must update the court on the status of the action in the Wisconsin Supreme Court. The status report should address: the schedule of the action; the scope of any factual development process; and the scope of the legal issues that the parties intend to raise. Per the usual practice, the parties should submit a joint report, setting out points of disagreement. The court may schedule a status conference shortly after the status report.

In the meantime, the parties are directed to complete briefing on the Legislature's motions to dismiss the BLOC plaintiffs' amended complaint and the Johnson intervenor-plaintiffs' complaint. Dkt. 86 and Dkt. 87. The briefing schedule is set out in the order below.

**B. The Citizen Data Scientists' motion to intervene**

A group of Wisconsin voters living in now-malapportioned congressional and legislative districts seeks to intervene. Dkt. 65. These proposed intervenors, who identify themselves as the "Citizen Data Scientists," say that they "are some of Wisconsin's leading professors, practitioners, and research scientists in data science, computer science, mathematics, statistics, and engineering." Dkt. 67, at 2. They say that they "are nonpartisan scientists and mathematicians whose interest is in seeing the redistricting process proceed fairly and transparently for all Wisconsin voters." *Id.* at 3. They propose using "'computational redistricting'—a relatively recent field applying principles of mathematics, high-speed computing, and spatial geography to the redistricting process." *Id.*

5

The court has warned that any additional intervenors would have to make a particularly compelling showing. Dkt. 60, at 5. The Citizen Data Scientists resist any heightened intervention standard because they didn't have notice that the court would impose such a standard, no party opposes their intervention, and the litigation has not yet meaningfully progressed. The point of the court's statement was that it was now unlikely that any proposed intervenor would have an interest not already adequately represented by the existing parties.

The Citizen Data Scientists' motion is timely in the sense that it was filed only five weeks after the Hunter plaintiffs' complaint. But the motion comes after the court has already allowed numerous other parties into the litigation and consolidated the '512 and '534 cases. The Citizen Data Scientists' malapportionment claims are the same as those already filed by the other sets of plaintiffs, and their stated interest in "fair and transparent" redistricting does not distinguish them from other parties in the case. Each set of parties brings its own perspective, but there are myriad political affiliations and demographic groups in the state of Wisconsin. Not every such party or group—partisan or not—has a right to intervene in this case.

The court must also consider whether intervention will unduly delay the case or prejudice the existing parties. Fed. R. Civ. P. 24(b)(3); *see also Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793, 803 (7th Cir. 2019). This litigation has already become quite complex; adding yet another party will needlessly further complicate the proceedings, potentially prejudice the other parties, and might invite a flood of additional motions to intervene by groups who believe that they have their own superior method of drawing the maps. The court concludes that the Citizen Data Scientists are not entitled to intervene, either as a matter of right or permissively.

The Citizen Data Scientists don't really have a unique interest that supports intervention. What they purport to bring is unique expertise. The Citizen Data Scientists "advocate that high-speed computers and cutting-edge algorithmic techniques can and should be used to thwart gerrymandering, streamline and accelerate the mapmaking process, and promote fair and effective representation for all Wisconsin residents." Dkt. 67, at 6. Their expertise is welcome: the court will grant them leave to submit amicus briefs on any substantive issue in the case.

ORDER

IT IS ORDERED that:

1. Plaintiffs may have until October 20, 2021, to respond to intervenor-defendant Wisconsin Legislature's motions to dismiss, Dkt. 86 and Dkt. 87. The Legislature may have until October 27, 2021, to reply.

2. The Congressmen intervenor-defendants', Hunter plaintiffs', and Johnson intervenor-plaintiffs' motions for leave to file additional briefing on the Johnson intervenor-plaintiffs' motion to stay, Dkt. 97; Dkt. 100; Dkt. 101, are GRANTED. The court accepts their additional briefs, Dkt. 97-1; Dkt. 100-1; Dkt. 101-1.

3. The Johnson intervenor-plaintiffs' second motion to stay proceedings, Dkt. 79, is GRANTED in part. Proceedings other than briefing on the Legislature's motions to dismiss are stayed until November 5, 2021.

4. The parties must, by November 5, 2021, update the court on the Wisconsin Supreme Court proceedings, as described above, with a joint submission, setting out any points of disagreement.

5. The motion to intervene filed by Leah Dudley, Somesh Jha, Joanne Kane, Michael Switzenbaum, Jean-Luc Thiffeault, and Stephen Joseph Wright, Dkt. 65, is DENIED, but they are granted amicus status and may file briefs on any substantive issue in the case.

Entered October 6, 2021.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

/s/

_____

AMY J. ST. EVE
Circuit Judge

/s/

_____

EDMOND E. CHANG
District Judge